# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| JANICE MILLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | |
| § | CIVIL ACTION NO. _____ |
| UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER AT TYLER, TEXAS, § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES**, **JANICE MILLER**, referred to herein as Plaintiff, and complains of **UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT TYLER, TEXAS**, referred to herein as Defendant, and would show the Court as follows:

### A. Parties

1. Plaintiff is an individual who resides in the State of Texas.

2. Defendant, the State of Texas, acting by and through the University of Texas Health Science Center at Tyler, Texas, which is a health-care facility owned and managed by the State of Texas, can be served with process by serving Dr. Kirk A. Calhoun, who is the administrative head and the president of the University of Texas Health Science Center at Tyler. Dr. Calhoun can be served at the University of Texas Health Science Center at Tyler, 11937 US Hwy 271, Tyler, Texas, 75708-3154.

### B. Jurisdiction and Venue

3. The Court has subject-matter jurisdiction over this lawsuit because the action arises

under Title VII of the Civil Rights Act of 1964. Additionally, this action is brought pursuant to § 1983 to redress the deprivation of past violations of the First and Fourteenth Amendments to the Constitution of the United States. Accordingly, this matter raises a federal question. Plaintiff further pleads that venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district.

### C. Facts

4. Janice Miller is a former employee of the University of Texas Health Science Center at Tyler, Texas. In October, 2004, Defendant hired Plaintiff as a Microbiologists III. On or about July 1, 2005, Plaintiff was promoted to Assistant Director of Laboratory Services. On or about August 1, 2006, Plaintiff was again promoted to Director of Laboratory Services and was paid in excess of $80,000 per year. Throughout her employment at the University of Texas Health Science Center at Tyler, Plaintiff received satisfactory job evaluations.

5. Not long after Plaintiff was promoted to Director of Laboratory Services, Dr. Timothy C. Allen, who was Chair and Medical Director of the Department of Pathology at Defendant and an indirect supervisor of Plaintiff, called Plaintiff into his office and used profanity of a sexual nature in her presence. After the tirade ended, Dr. Allen said, "Well, I just finished one of the worse rants ever, and you didn't even blink an eye. That's exactly what I need in a Lab Manager."

6. Over the course of many weeks, Dr. Allen continued to "vent" in front of Plaintiff. He would call Plaintiff to his office, shut the door, and then subject Plaintiff to vulgar outbursts. He would use the "F-word" in multiple ways anywhere from twenty-five to fifty times in a session. He also used the word "C _ _ _". He went on to say that the "C-word" was his favorite word, but his wife would not let him use it.

7. The sexually charged language used by Dr. Allen made Plaintiff feel very uncomfortable and was unwelcome. On or about February 20, 2007, Plaintiff went to the Director of Human Resources, who was Georgia Melton, and told the Director about Dr. Allen's conduct. Plaintiff was reluctant to go to H.R. because she feared retaliation. After speaking with the Director of H. R., Plaintiff met with Dr. Allen and told him, "Your profanity, your rage, and your use of my time are no longer acceptable." Dr. Allen apologized and said that it would never happen again.

8. For a short period of time, things improved for Plaintiff. Dr. Allen, however, began to direct his profane outbursts toward Plaintiff's staff. Plaintiff received reports from the employees that she supervised regarding Dr. Allen's conduct. In response, Plaintiff went back to the H. R. Director and asked for help. On or about July 9, 2007, Dr. Allen made a public apology for his conduct, and he ceased almost all communication with Plaintiff. Furthermore, Dr. Allen moved his office out of the lab.

9. Defendant's Risk Manager, Anna Robinson, told Plaintiff that she could write an "Occurrence Report" to document Dr. Allen's conduct and abuse. Based on the suggestion of Ms. Robinson, Plaintiff did write an Occurrence Report dated November 6, 2007, and she submitted the report to Defendant.

10. On February 25, 2008, Robert Marshall, who was Vice-president and Chief Operating Officer for Defendant, terminated Plaintiff's employment. No specific reason was given for the termination; however, Mr. Marshall stated during the termination meeting that he knew that Plaintiff "had a problem with Dr. Allen." He was clearly referring to Plaintiff's complaints about Dr. Allen. Morever, Georgia Melton was present during the termination meeting, and she knew about Plaintiff's complaints. Immediately after Defendant fired Plaintiff, it replaced her with a male employee.

11. Plaintiff appealed the decision to terminate her, but her appeal fell on deaf ears. It was Defendant's position that she did not have a right to appeal the unlawful conduct. Plaintiff contends that she and other female employees were subjected to a hostile work environment and that she has suffered desperate treatment because of her sex/gender. Additionally, Plaintiff contends that when she complained about the hostile work environment that Defendant retaliated against her by terminating her employment. Her termination violated Title VII. Her termination also violated the First and Fourteenth Amendments to the U.S. Constitution.

### D. Exhaustion of Administrative Procedures

12. Plaintiff timely filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") a charge of discrimination against Defendant. Plaintiff received a notice of right to sue from the EEOC within 90 days of the filing of this Complaint. A copy of the notice of right to sue is attached as Exhibit "A."

### E. Title VII Discrimination, Hostile Work Environment, and Retaliation

13. Paragraphs 1-12 are incorporated by reference.

14. Plaintiff is an "employee" within the meaning of Title VII and belongs to a class protected under the Act, namely she is a female.

15. Defendant is an "employer" within the meaning of Title VII.

16. Defendant intentionally discriminated against Plaintiff because of her sex/gender in violation of Title VII by terminating her employment on or about February 25, 2008.

17. Additionally, Defendant, through its employee Dr. Timothy C. Allen, subjected Plaintiff and the employees that Plaintiff supervised to a hostile work environment. Dr. Allen constantly used vulgar, sexually charged language toward Plaintiff. When Plaintiff demanded that

he stop and complained about the offensive conduct to Human Resources, Dr. Allen subjected her subordinates to similar abuse. The harassment was unwelcome and based on Plaintiff's sex and/or gender, that is, female. The harassment was sufficiently severe or pervasive to alter the terms or conditions of Plaintiff's employment and create a hostile or abusive work environment. Defendant knew or should have known of the harassment; however, Defendant failed to take prompt remedial action to stop the harassment and remedy the situation.

18. Lastly, when Plaintiff complained about the hostile work environment and documented the harassment by filing an Occurrence Report regarding Dr. Allen, Defendant unlawfully retaliated against her in violation of Title VII by terminating her employment on February 25, 2008. Plaintiff engaged in protected activity by opposing an employment practice that is unlawful under Title VII and by participating in an investigation of Dr. Allen's unlawful conduct. In retaliation, Defendant fired her. In fact, the only justification given for her termination was her "problems" with Dr. Allen.

### F. 42 U.S.C. § 1983 AND CONSTITUTIONAL VIOLATIONS

19. Paragraphs 1-18 are incorporated by reference.

20. At all relevant times, Plaintiff was a public employee. Furthermore, at all relevant times, Defendant and its employees were acting under the color of the laws and regulations of the State of Texas.

21. Defendant deprived Plaintiff of her rights under the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983. In particular, Defendant violated Plaintiff's right of free speech by firing her for speaking out against Dr. Allen's harassment and the hostile work environment he had created in the workplace. Plaintiff further pleads that her speech involved

a matter of political, social, or other concern; therefore, her speech was constitutionally protected under the First Amendment. Furthermore, Plaintiff's interest in her statements outweighs any interest Defendant had in promoting the efficient operation and administration of government services. Plaintiff's speech was a substantial and motivating factor in Defendant's decision to terminate Plaintiff. Defendant acted intentionally to chill Plaintiff's speech and to punish her for exercising her free speech rights.

22. Plaintiff also pleads that Defendant's actions caused Plaintiff to be deprived of rights, privileges, and immunities guaranteed by the Constitution of the United States, specifically the Fourteenth Amendment of the United States Constitution, in that Defendant's actions violated her right to equal protection. Again, Plaintiff was subjected to sex/gender discrimination and harassment during the course of her public employment. Such discrimination and harassment violates the Equal Protection Clause of the Fourteenth Amendment.

### G. Damages

23. Plaintiff suffered the following injuries as a direct and proximate result of Defendants' conduct:

    a. Plaintiff lost her job with Defendant;

    b. Plaintiff has suffered a substantial loss of income, in the past and into the future;

    c. Plaintiff has suffered a loss of employment benefits, in the past and in the future;

    d. Plaintiff has suffered damage to her professional reputation, in the past and in the future; and

e. Plaintiff has suffered and continues to suffer severe emotional distress and mental anguish.

### H. Fees, Costs, and Interest

24. Upon judgment, Plaintiff is entitled to an award of attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k). Plaintiff is also entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988. Finally, Plaintiff is entitled to pre and post-judgment interest at the maximum rate allowed by law.

### I. Prayer

25. **FOR THESE REASONS**, Plaintiff asks the Court to take the following action:

   a. Award Plaintiff actual damages, including, but not limited to back pay, front pay, and all damages for past and future lost employment benefits and salary;

   b. Award Plaintiff damages for past and future emotional distress and mental anguish;

   c. Award Plaintiff all past and future damages that she is entitled to on account of the damage to her professional reputation;

   d. Award Plaintiff attorney's fees and court costs;

   e. Award Plaintiff pre and post-judgment interest at the maximum rate allowed by law; and

   f. Award Plaintiff any and all additional relief to which she is entitled, at law or in equity.

Respectfully submitted,

**CLARK & PORTER**

/s/ Charles H. Clark
Charles H. Clark
TSBA No. 04274000

Gregory S. Porter
TSBA No. 24002785

604 Woldert Street
P. O. Box 98
Tyler, Texas 75710
Phone: (903) 593-2514
Facsimile: (903) 595-1294

**ATTORNEYS FOR PLAINTIFF**